## Roy Wilson v. The State.

No. 14174. Delivered June 10, 1931.
State's Rehearing Denied November 18, 1931.

The opinion states the case.

*Underwood, Johnson, Dooley & Simpson, Vance Huff,* and *Rives Cornelius,* all of Amarillo, for appellant.

*Jas. C. Mahan,* District Attorney, of Wellington, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is arson; the punishment, confinement in the penitentiary for two years.

The state relied upon circumstantial evidence. Appellant was a tenant of H. Lott, having leased from Lott the residence in which he (appellant) was living. In addition to a few articles of furniture owned by Lott, appellant had in the house his own furniture, which he had insured on April 16, 1929, for $2,500. Sometime after midnight on June 28, 1929, appellant went to a neighbor's house and asked him to turn in the fire alarm, as his residence was on fire. Appellant had on an undershirt, a pair of trousers and boots. Some of the witnesses for the state said that the boots were laced and others were unable to testify on the point. Appellant and his witnesses declared that the boots were not laced. The alarm having been given, the fire was extinguished by the local volunteer fire company. An investigation disclosed kindling under the kitchen floor. There was some material near the kindling which had been saturated with kerosene oil. A shirt with red paint on it was near the kindling. Appellant had some red paint in one of his outbuildings. On the evening before the fire appellant bought a quantity of kerosene oil. The sheriff testified that appellant told him he took the oil across the river to a place belonging to his landlord. Appellant denied that he made this statement to the sheriff. He said that he told the sheriff that he carried the oil to a tractor on Mr. Lott's place. Several witnesses for appellant testified that on the evening before the fire appellant brought a quantity of kerosene oil to a tractor he had in charge on Mr. Lott's place, and put the oil in the tractor. Appellant's wife was away from home at the time of the fire. Appellant alone, according to his testimony, was in the house when the fire started. He testified that the heat and smoke aroused him and that immediately partially dressing himself, he went to a neighbor's house for the purpose of having the alarm turned it. Appellant denied that he had anything to do with placing the kindling under the kitchen floor. He testified that he did not have it placed there and did not know who was the guilty party. He said that on the night before the fire he stayed at his son's house but had remained at home on the night of the

fire in view of the fact that he planned to get up early in order to make a trip to Claud. He testified further that on Saturday before the fire he went under the house to fix a leak in a pipe, and that there was no kindling under the house at that time.

Appellant's motion for new trial was based in part on averments to the effect that he had discovered new evidence since the trial which was material to his defense. No question as to the diligence used is presented. The affidavits of the witnesses were attached to the motion for new trial. A hearing being had, the witnesses gave testimony substantially the same as the statements set forth in their affidavits. It appears from the testimony heard on the motion that after the jury had retired and before a verdict had been returned appellant's counsel advised the trial court that he thought he would be able to secure witnesses whose testimony was newly discovered before the jury returned a verdict. Counsel expressed the desire that the jury be brought in for the purpose of hearing the testimony in the event he was able to get the witnesses. It appears that the court advised counsel that this might be done if the district attorney would agree to it. However, before the witnesses could be gotten the jury returned a verdict of guilty. Appellant and his counsel both gave testimony showing that they were not lacking in due diligence in having failed to sooner discover the new testimony. One of the witnesses testified she was a school teacher; that she went to appellant's home on June 24, 1929, for the purpose of looking at some furniture that appellant's landlord had told her appellant desired to sell; that appellant was absent from home; that there was a white man in the yard, whom she did not know; that she asked him for permission to look at the furniture; that he told her he supposed it would be all right; that a negro opened the door for her and she entered the house and looked at the furniture; that she did not tell anybody about the occurrence until after appellant had been tried. C. B. Owens testified that he was the man who was in the yard when the witness came to look at the furniture; that when he came to the house there was a medium sized negro, weighing about 140 pounds, cutting kindling and carrying it into the house; that he did not know the negro and had never seen him before. He said he did not tell anybody about the incident until after the appellant had been tried. The witnesses by whom it was proposed to give the foregoing testimony were not related to appellant. According to her testimony, the school teacher had never seen appellant until she gave her testimony on the motion for new trial.

As heretofore mentioned, the state relied entirely upon circumstantial evidence. Appellant admitted practically all of the circumstances proven by the state except the placing of the kindling under the kitchen floor and the statement it was claimed he made to the sheriff concerning his disposition of the kerosene oil he had bought on the evening before the

fire. He said that he did not place the kindling under the kitchen floor, did not have it placed there, had nothing to do with setting fire to the house and knew nothing about it. The testimony made it plain that the fire was of incendiary origin. Proof that an unknown negro was at appellant's place cutting kindling and carrying it into the house between the date appellant fixed the leak in the pipe under the house and the night of the fire would have furnished a strong circumstance supporting the reasonable hypothesis that some person other than appellant set fire to the house. To warrant a conviction it was necessary, among other things, that the circumstances exclude every other reasonable hypothesis except that of appellant's guilt. Branch's Annotated Penal Code, sec. 1875; Jones v. State, 34 Texas Crim. Rep., 400, 30 S. W., 1059. We think the new testimony is within the rule announced by Mr. Branch in his Annotated Penal Code, sec. 192, as follows: "To warrant a new trial on the ground that new testimony has been discovered since the trial it is incumbent on defendant to satisfy the court that the new testimony has come to his knowledge since the trial and that it was not known beforehand, and it must be such as reasonable diligence could not have secured at the former trial; it must be competent, material to the issue, and probably true, going to the merits and not merely cumulative or collateral nor merely to impeach a former witness; and it must appear that it is reasonably probable that it will change the result."

See also Porter v. State, 111 Texas Crim. Rep., 68, 11 S. W. (2d) 324.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—State's motion for rehearing is founded upon the contention that the diligence in ascertaining the existence of newly discovered evidence was not sufficient to comply with the statutory demand. On re-examination of the record, we are confirmed in the conclusion that the evidence of diligence was sufficient and that upon hearing of it a new trial should have been accorded the appellant.

The motion for rehearing is overruled.

*Overruled.*