490 So.2d 291 (1986)
STATE of Louisiana
v.
Michael CARTER.
No. KA-4513.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
Rehearing Denied July 16, 1986.
*292 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for appellee.
William J. O'Hara, III, New Orleans, for appellant.
Before BARRY, CIACCIO and LOBRANO, JJ.
BARRY, Judge.
The defendant was charged with first degree murder, convicted of manslaughter, La.R.S. 14:31, and sentenced to twenty-one years at hard labor.
On August 9, 1984 Theresa Ann Johnson and two male companions drove the defendant to his mother's house across the river to get some clothes. They went back to the house because the defendant forgot his belt. He returned to the car carrying a paper bag.
On the drive back the defendant accused the three of stealing $20.00 from him. He ordered the driver to stop the car, pulled a gun from the bag, and forced them to line up outside the vehicle. He again made the accusation and fired several shots which injured one male and killed Johnson.
The defendant testified that Johnson had a gun and pulled it on him in order to rob him. He claims he grabbed Johnson and was able to get the gun. When he turned he saw one of the men coming at him so he fired one shot. Johnson attacked him and he shot her.
The defendant assigns two errors and requests an errors patent review.

THE CORONER'S REPORT
Defendant asserts the trial court erred by refusing to admit into evidence the Coroner's day record under the business records exception to hearsay.
Dr. Richard Tracy, pathologist for the Coroner, performed the autopsy on Johnson and testified as to the cause of death and identified pellets he removed from her skull. Dr. Tracy based his testimony on the proces verbal, a transcript of his contemporaneous description of the autopsy, and the protocol, a synopsis of his findings. Defense counsel questioned him concerning the day record, a document prepared by the Coroner's staff at the scene of the death:
Q. I ask you to examine these two documents, doctor. Do you see those as part of the normal autopsy protocol?
A. Yes. This is referred to as the "Day Record", and this is the notation kept by the clerks on this case.
Q. That is kept signed also by one of the assistant coroners who is also an M.D.?
A. Later after the case is evaluated, then it is signed by the assistant coroner.
Q. Now, is that record kept in the Coroner's office in the course and scope of its business?
A. Yes.
Q. And that would normally be appended to your file in this matter, your protocol?
A. That is right, yes.
Q. Do you recognize that record, I believe you called it?
A. Yes.
Q. That day record, as being the day record concerning Theresa Ann Johnson, the decedent in this case?
A. Theresa Johnson.

*293 Q. I'd mark this for identification right now. Doctor, let me ask you this before I mark it. I've given you two sheets. The second sheet, is that the back of this sheet or is it two separate pages.
A. This is a separate page.
Q. I am going to mark this one, the Coroner's Day Record, as D-1. It is part of the Coroner's office normal business routine to maintain these records, is it not?
A. Yes.
Q. Doctor, I am going to refer you to D-1, this line, one under "History". It's line 7. Can you recognize the signature of the doctor who signed that?
A. Doctor Rosenburg (sic). I wouldn't be able to identify this handwriting
Q. He is an assistant coroner who is known to you?
A. Yes.
Q. Seventh line, what does that say, doctor?
BY MR. MC ELROY (prosecuting attorney):
Your honor, I am going to have to object. This is now hearsay. The doctor is not the custodian of those records. He would merely be relating to the jury what some other person kept as a record. It is hearsay and I have to object to the doctor's reading it.
BY THE COURT:
Objection is sustained.
The requirements for the business records exception are: 1) the entries must be originally made in the routine of the business; 2) the entries must have been made upon the personal knowledge of the recorder or person reporting to him; 3) the entries must have been made at or near the time of the recorded transaction; and 4) the recorder and his informants must be shown to be unavailable. State v. Monroe, 345 So.2d 1185 (La.1977). Defendant failed to meet these requirements. Dr. Tracy's testimony was based on his autopsy findings, not on the excluded day record which would constitute hearsay. The trial court properly refused the admission.
Defendant also asserts the day record should be admitted under the hospital records exception to hearsay, R.S. 13:3714.[1]
The day record was offered as an official document of the Coroner's office and was not certified as a hospital record by an administrator or medical records librarian. The hospital records exception is inapplicable.
This assignment has no merit.

VICTIM'S CRIMINAL RECORD
Defendant argues the trial court erred by refusing to admit Johnson's criminal record to show her propensity for carrying a weapon. Defendant admitted killing Johnson but claims she pulled the gun and tried to rob him. He claims self-defense, therefore, Johnson's prior conviction for carrying a concealed weapon should have been admitted.
R.S. 15:482 permits introduction of a victim's "dangerous character or of his threats against [the] accused" where there has previously been evidence of an overt act or hostile demonstration by the victim against the defendant at the time of the incident.
The state's witnesses testified that the defendant shot Johnson because of an argument over money. Both of Johnson's male companions testified that she never had a gun. Their testimony was corroborated by the forensic evidence that Johnson was shot twice in the side of the head.
*294 In State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985), the court found that an overt act had not been satisfactorily shown where the only evidence was the self-serving conflicting testimony of the defendant himself.
This assignment has no merit.
Defendant requests that we examine the record for errors patent. There are none.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 13:3714 provides:

Whenever a certified copy of the chart or record of any hospital in this state, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.