632 So.2d 822 (1994)
STATE of Louisiana
v.
Vida MONTZ.
No. 92-KA-2073.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1994.
*824 Harry F. Connick, Dist. Atty., Karen E. Godail, Asst. Dist. Atty., New Orleans, for State of La.
Blake G. Williams, Williams & Associates, New Orleans, for Vida Montz.
Before BARRY, WARD and WALTZER, JJ.
WARD, Judge.
On April 20, 1992 a twelve member jury convicted Vida Montz of the attempted second degree murder of Clyde McCaskill. Montz was sentenced to fifty years at hard labor. Subsequently, he was adjudicated a second offender and resentenced to fifty-five years at hard labor.
Montz assigns three instances of trial court error which he argues demand reversal of his conviction and sentence. Because we find no merit to any of his assertions, we affirm the trial court action in all respects.
On the evening of November 6, 1991, Clyde McCaskill and Gregory Chapman met Vida Montz and others on the corner of Hickory and Leonidas Streets. Montz and McCaskill had known each other for several years and after he and Montz shook hands, McCaskill and Chapman went to a nearby grocery store to buy beer. As Chapman paid for the beer, McCaskill went outside where he encountered Montz again. This time Montz shot McCaskill twice at close range and then several other times as McCaskill attempted to escape. When the police arrived McCaskill told them Montz shot him.
Tara Augustus, Coteryl Oline, and Demetrius Henderson, three defense witnesses, testified that they saw McCaskill pull a gun first and point it at Montz who then shot McCaskill. No gun was found in McCaskill's possession and McCaskill denied having a gun on the night of the shooting.
A review of the record reveals no errors patent.
In his first assignment of error, Montz argues trial court error in refusing to allow Carlos Lewis to testify about the dangerous character of the victim, Clyde McCaskill. The defense proffered Lewis' testimony who said that McCaskill himself either attempted or had someone else attempt to kill Lewis. Lewis stated that this was common knowledge in the neighborhood but that he never told Montz about the murder attempts. Montz asserts that Lewis' testimony was crucial to prove that he acted in self-defense.
Generally, evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. However, C.E. art. 404 A(2)(a) provides in part:
Except as provided in Article 412, evidence of a pertinent trait of character, such as moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt action on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible; ...
C.E. art. 404 B(1) further provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character in order to show that he acted in conformity therewith. See Comments (c) and (l) to C.E. art. 404; State v. Gantt, 616 So.2d 1300 (La.App.2d Cir.1993).
Evidence of the victim's dangerous character or of threats against the defendant supports a plea of self-defense because this evidence is relevant to show that the victim *825 was the aggressor and to show that the defendant's apprehension of danger was reasonable. State v. Edwards, 420 So.2d 663 (La.1982). In order for such evidence to be admissible, the defendant must first produce evidence that at the time of the incident the victim made a hostile demonstration or committed an overt act against the defendant of such character which would have created in the mind of a reasonable person that he was in immediate danger of losing his life or suffering great bodily harm. State v. Gantt, supra.
If the purpose of the evidence is to show the defendant's reasonable apprehension of danger, it must be shown that the defendant knew of the victim's prior threats or reputation. State v. Eishtadt, 531 So.2d 1133 (La.App. 4 Cir.1988). Once this knowledge is established, evidence of the victim's character, which includes evidence of his general reputation and of specific threats or acts of violence against the defendant, is admissible. State v. Edwards, supra. However, specific acts committed by the victim against third persons is not admissible. State v. Jones, 451 So.2d 1181 (La.App. 1st. Cir.1984). If the purpose of the evidence is to show that the victim was the aggressor, there is no requirement that the defendant know of the victim's prior acts or reputation; however, such evidence must be of the victim's general reputation, not evidence of specific acts or personal opinion. State v. Eishtadt, supra.
The trial court did not err in excluding Lewis' testimony. That testimony was not admissible to show Montz's reasonable apprehension of danger since the testimony concerned specific acts of violence against a third person and there was no showing that Montz knew of the acts. Moreover, Lewis' testimony was not admissible to show that McCaskill was the aggressor because the testimony was about specific acts, not McCaskill's general reputation. Hence, this assignment is without merit.
By his second assignment, Montz contends his sentence is excessive because the trial judge failed to articulate fully the reasons for the sentence and that the sentence is disproportionate to the crime. A review of the record shows that defendant failed to make or file a motion to reconsider sentence as required by C.Cr.P. art. 881.1.[1] Failure to move for reconsideration precludes defendant from raising an objection to the sentence on appeal. State v. Branch, 622 So.2d 828 (La.App. 4 Cir.1993). However, in State v. Mims, 619 So.2d 1059 (La.1993), the Supreme Court reviewed an excessive sentence claim where the motion to reconsider failed to set forth the grounds on which it was based as required by C.Cr.P. Article 881.1. The court held that the defendant did not lose the right to appeal if he failed to allege any specific ground for excessiveness or present any argument or evidence not previously considered by the trial court; rather, the defendant was relegated to having the appellate court consider the "bare claim of excessiveness." Id. at 1060. The court further held that Article 881.1 only precluded the defendant from presenting arguments to the appellate court which had not been presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency.
It is not entirely clear whether the Supreme Court intends for Mims to apply to cases where no motion to reconsider has been filed by the defendant. The Supreme Court has denied writs, since its decision in Mims, in two cases where the defendants failed to file a motion to reconsider and this court refused to consider their claims of excessive sentences. State v. Lee, 618 So.2d 551 (La.App. 4 Cir.1993), writ denied 624 So.2d 1222 (La.1993); State v. Hudson, 618 So.2d 539 (La.App. 4 Cir.1993), writ denied 623 So.2d 1334 (La.1993). But, writ denials by the Supreme Court are of no value as precedents although they may be indicative of a predisposition on a certain legal issue but not necessarily determinative of that issue. Garlington v. Kingsley, 289 So.2d 88 (La.1974).
*826 Since Mims is distinguishable from the present case and the Supreme Court has denied writs in subsequent cases which are similar to the present case, it appears that the issue of whether Montz's sentence is excessive is not reviewable because of his failure to file a motion to reconsider.
In a final assignment of error, Montz complains that the trial court erred in denying his motion for a new trial based on the discovery of new evidence, namely the testimony of Sergeant Caulfield who stated that he removed a gun from McCaskill's person after the shooting. This assignment presents two problems. First, it appears that the trial court lacked jurisdiction to hear the motion for new trial because it was filed after the order of appeal had been entered on August 21, 1992. Thus, under C.Cr.P. Arts. 853 and 916, the trial court was without jurisdiction to hear and rule upon the motion. Second, the testimony taken at the hearing on the motion for new trial is not in the record;[2] hence, the merits of this issue cannot be reviewed at this juncture. For the foregoing reasons, we are without jurisdiction to assess this assignment. The defendant may proceed on this issue in an application for post-conviction relief.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This provision went into effect January 31, 1992; hence, it applies to the present case because defendant was originally sentenced on July 17, 1992. See State v. Trahan, 607 So.2d 1016 (La.App. 3rd Cir.1992).
[2] Montz has private retained counsel, making him responsible for providing the transcript.